## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| ARMO BIOSCIENCES, INC., PETER VAN VLASSELAER, XIANGMIN CUI, CARL GORDON, PIERRE LEGAULT, NAIYER RIZVI, BETH SEIDENBERG, STELLA XU, ELI LILLY AND COMPANY, and BLUEGILL ACQUISITION CORPORATION, | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on May 10, 2018 (the "Proposed Transaction"), pursuant to which ARMO BioSciences, Inc. ("ARMO" or the "Company") will be acquired by Eli Lilly and Company ("Parent") and its wholly-owned subsidiary, Bluegill Acquisition Corporation ("Merger Sub," and together with Parent, "Eli Lilly").

2.      On May 9, 2018, ARMO's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger and reorganization (the "Merger Agreement") with Eli Lilly.  Pursuant to the terms of the Merger

Agreement, Merger Sub commenced a tender offer, currently set to expire on June 21, 2018, to acquire all of ARMO's outstanding common stock for $50.00 in cash for each share of ARMO common stock.

3.     On May 23, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of ARMO common stock.

9.      Defendant ARMO is a Delaware corporation and maintains its principal executive offices at 575 Chesapeake Drive, Redwood City, CA 94063.  ARMO's common stock is traded on the NASDAQ GS under the ticker symbol "ARMO."

10.     Defendant Peter Van Vlasselaer ("Van Vlasselaer") is President, Chief Executive Officer, and a director of ARMO.  Defendant Van Vlasselaer is also a co-founder of the Company.

11.     Defendant Xiangmin Cui ("Cui") is a director of ARMO.

12.     Defendant Carl Gordon ("Gordon") is a director of ARMO.

13.     Defendant Pierre Legault ("Legault") is a director of ARMO.

14.     Defendant Naiyer Rizvi ("Rizvi") is a director of ARMO.

15.     Defendant Beth Seidenberg ("Seidenberg") is a director of ARMO.

16.     Defendant Stella Xu ("Xu") is a director of ARMO.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant Parent is an Indiana corporation and is a party to the Merger Agreement.

19.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of ARMO (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable.  As of the close of business on May 21, 2018, there were approximately 30,405,109 shares of ARMO common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

27.     ARMO is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates that activate the immune system of cancer patients to recognize and eradicate tumors.

28.     The Company's lead product candidate, AM0010 (pegilodecakin), stimulates the survival, expansion, and tumor killing (cytotoxic) capacity of a particular white blood cell of the immune system, called the CD8+ T cell.  ARMO has focused on CD8+ T cells because these cells have been shown to recognize and kill cancer cells.  An abundance of tumor-infiltrating CD8+ T cells improves the prognosis and lengthens the survival of cancer patients.

29.     On May 9, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement.

30.     Pursuant to the terms of the Merger Agreement, ARMO's stockholders will receive $50.00 in cash for each share of ARMO common stock.

31.     According to the press release announcing the Proposed Transaction:

Eli Lilly and Company (NYSE:  LLY) and ARMO BioSciences, Inc. (NASDAQ: ARMO) today announced a definitive agreement for Lilly to acquire ARMO for $50 per share, or approximately $1.6 billion, in an all-cash transaction. ARMO BioSciences is a late-stage immuno-oncology company that is developing a pipeline of novel, proprietary product candidates designed to activate the immune system of cancer patients to recognize and eradicate tumors.

The acquisition will bolster Lilly's immuno-oncology program through the addition of ARMO's lead product candidate, pegilodecakin, a PEGylated IL-10 which has demonstrated clinical benefit as a single agent, and in combination with both chemotherapy and checkpoint inhibitor therapy, across several tumor types. Pegilodecakin is currently being studied in a Phase 3 clinical trial in pancreatic cancer, as well as earlier-Phase trials in lung and renal cell cancer, melanoma and other solid tumor types. ARMO also has a number of other immuno-oncology product candidates in various stages of pre-clinical development. . . .

Under the terms of the agreement, Lilly will promptly commence a tender offer to acquire all shares of ARMO BioSciences for a purchase price of $50 per share in cash, or approximately $1.6 billion. The transaction is expected to close by the end of the second quarter of 2018, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of ARMO's common stock. Very shortly after the closing of the tender offer, Lilly will acquire any shares of ARMO that are not tendered into the tender offer through a second-step merger at the tender offer price.

This transaction will be reflected in Lilly's reported results and financial guidance according to Generally Accepted Accounting Principles (GAAP), and is subject to customary closing conditions. There will be no change to Lilly's 2018 non-GAAP earnings per share guidance as a result of this transaction.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

32.    Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

33.    The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

34.    First, the Solicitation Statement omits material information regarding ARMO's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview").

35.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36.    With respect to the Company's financial projections, the Solicitation Statement

fails to disclose: (i) the line items used to calculate unlevered free cash flow; (ii) a reconciliation of all non-GAAP to GAAP metrics; (iii) the probability of regulatory success of the Company's product development candidates; and (iv) with respect to the Company's product AM0010, management's assumptions regarding its commercial launch success, market size, market share, competition, pricing, reimbursement, research and development expenses, sales, general and administrative expenses, contractual relationships, effective tax rate and utilization of net operating losses, other relevant factors relating to the Company's long-range operating plan, and how certain of the assumptions and estimates may change over time

37.     With respect to Centerview's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose:  (i) the inputs and assumptions underlying the discount rates ranging from 12.5% to 14.5%; (ii) the implied terminal value of ARMO; (iii) the net present value of tax savings from usage of federal net operating losses and future losses; (iv) ARMO's estimated net cash balance as of June 30, 2018; (v) the value of preclinical non-AM0010 pipeline; and (vi) the number of fully-diluted outstanding Company shares.

38.     With respect to Centerview's Selected Public Company Analysis, the Solicitation Statement fails to disclose the operational, business, and financial characteristics for the companies observed by Centerview in the analysis.

39.     With respect to Centerview's Selected Precedent Transaction Analysis, the Solicitation Statement fails to disclose the operational, business, and financial characteristics for the transactions observed by Centerview in the analysis.

40.     With respect to Centerview's analysis of premiums paid, the Solicitation Statement fails to disclose the premiums paid in each of the transactions observed.

41.     Second, the Solicitation Statement omits material information regarding the

background of the Proposed Transaction and potential conflicts of interest.

42.     The Solicitation Statement fails to disclose whether the Company executed any confidentiality agreements that contained "don't ask, don't waive" provisions that prevented the counterparties from requesting waivers of standstill provisions to submit superior offers to acquire the Company.

43.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

44.     Additionally, the press release announcing the Proposed Transaction provides: "Centerview Partners LLC is acting as lead financial advisor to ARMO BioSciences and the Board, and Jefferies LLC is providing financial advice to ARMO."  However, the Solicitation Statement fails to disclose any information regarding Jefferies LLC's engagement, including the amount of compensation it received or will receive in connection with its engagement, the services it provided in connection with the Proposed Transaction, and whether Jefferies LLC has provided any past services to the parties to the Merger Agreement or their affiliates (and if so, the nature of such services and the amount of compensation received for such services).

45.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.     Moreover, the Solicitation Statement fails to disclose when Eli Lilly first expressed interest in retaining the Company's offices and/or directors following the close of the merger.

47.     Communications regarding post-transaction employment during the negotiation of

the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48.    The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

49.    The above referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## <u>COUNT I</u>

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

50.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.    Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

52.    Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

53.    The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

54.    The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

55.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

56.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

57.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

58.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

59.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

60.     Plaintiff and the Class have no adequate remedy at law.

## <u>COUNT II</u>

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

61.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

63.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation

and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

64.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

65.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

66.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

67.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Eli Lilly)

68.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69.     The Individual Defendants and Eli Lilly acted as controlling persons of ARMO within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of ARMO and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70.    Each of the Individual Defendants and Eli Lilly was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly connected with and involved in the making of the Solicitation Statement.

72.    Eli Lilly also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

73.    By virtue of the foregoing, the Individual Defendants and Eli Lilly violated Section 20(a) of the 1934 Act.

74.    As set forth above, the Individual Defendants and Eli Lilly had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

75.    As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

76.    Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  May 29, 2018

**RIGRODSKY & LONG, P.A.**

By:    */s/ Brian D. Long*

Brian D. Long (#4347)

**OF COUNSEL:**

Gina M. Serra (#5387)

300 Delaware Avenue, Suite 1220

**RM LAW, P.C.**

Wilmington, DE 19801

Richard A. Maniskas

Telephone: (302) 295-5310

1055 Westlakes Drive, Suite 300

Facsimile: (302) 654-7530

Berwyn, PA 19312

Email: bdl@rl-legal.com

Telephone: (484) 324-6800

Email: gms@rl-legal.com

Facsimile: (484) 631-1305

Email: rm@maniskas.com

*Attorneys for Plaintiff*